### GULDEN v. CHANCE et al.

(Circuit Court, E. D. Pennsylvania. January 28, 1910.)

No. 8, October Sessions, 1907.

1. TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNFAIR COMPETITION IN TRADE—LIMITATION OF PACKAGES.

One dealer is not altogether prohibited from copying the style or dress of package gotten up by another under the penalty of a suit for unfair trade. It is only where such special marks have become identified in the mind of the public with a certain party's goods, and are manifestly imitated for the purpose of getting away his trade, that this is the case. Not every appropriation, in other words, of the ideas of another, amounts to unfair trade competition. There must be an established right in that which is taken, as well as a practiced deception, before this ensues.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. § 67.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION OF PACKAGES—USE OF COLORS AND DESIGNS COMMON TO THE TRADE.

This is not to say that, notwithstanding the use of colors and designs common and appropriate to the particular article, a combination of color

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and style of package may not be so distinct and have become so identified with the goods of some one dealer that a manifestly purposed imitation of them will not be regarded as fraudulent; but only that, before that result is reached, the combination must be so unusual and the imitation so clear that the similarity cannot be other than designed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—SIMILARITY OF PACKAGES.

The adoption and use by defendants, who were packers of olives, of bottles, labels, and caps somewhat similar to those used by complainant, *held* not to constitute unfair competition, nor to evidence any intention of deceiving purchasers, in view of the fact that defendants had been in the business for 30 years, that other packers used bottles of the same or similar design and labels and caps more or less similar in appearance and style, and that those used by defendants had many distinguishing features and did not resemble complainant's so closely as to indicate an intentional imitation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition, see note to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by Charles Gulden against R. C. Chance's Sons. On final hearing. Bill dismissed.

The following is the label of complainant:

The following is the label of defendants:

The following is the neck label of complainant:

The following is the neck label of defendants:

See, also, 163 Fed. 447, and 165 Fed. 624, 92 C. C. A. 58.

Timothy D. Merwin, for complainant.

John K. Andre and Frank P. Prichard, for defendants.

ARCHBALD, District Judge (specially assigned). The charge of infringement of complainant's trade-mark "Don Carlos" was eliminated by the decision of the Court of Appeals (165 Fed. 624), and the

question of unfair competition therefore alone remains. To make this out, a clear purpose on the part of the defendants must be shown to palm off their goods as those of the complainant, by imitative and misleading dress, and thus divert to themselves a portion of his trade. That there was any intention of that kind, or that anything more than a general, if not an unavoidable, correspondence in the make-up of the defendants' packages with those of the complainant, has been shown, cannot, under the evidence, be successfully maintained. The defendants are reputable dealers in Philadelphia; the house (father and sons) having been in business there for upwards of 60 years, and having packed olives for 30 years, and having an equal standing in the trade with the complainant, who has been in business in New York for 40 years, and packed olives for 33 years. The temptation which sometimes prompts one man to try and steal the trade of another was therefore wanting. And while it must be confessed that, in these days of keen business competition, the same scruples, as once, do not always obtain, there was not thus, at least, the same occasion for such dishonest attempts as there might otherwise have been. Neither are the defendants shown to have cheapened on the complainant, putting out an inferior quality of goods at a lower price, which is one of the most frequent incidents of unfair trade; and the defendants are therefore relieved from unfavorable imputation to the extent that these circumstances are not present.

Without resting the case upon these features of it, however, and upon a full consideration of all the evidence, the charge of unfair competition cannot be regarded as made out. It centers about the adoption by the defendants of the name "Don Caesar" as one of their brands, and the selection, in that connection, of a display label, on which, in company with it, a branch of olives in natural colors was shown, this being designedly imitative, as it is said, of the complainant's "Don Carlos" label, similarly embellished and colored, a red wax cap at the same time being substituted by the defendants for a green cap previously used, thus completely copying the distinctive marks of the complainant's goods. This change took place, as it is pointed out, just about the time that an experienced salesman, named Weed, went over from the complainant to the defendants' employ, and was made at his suggestion, the better to enable him to divert and control the trade which he had worked up for the complainant. And as further proof that the imitation was designed, it is claimed that cuts of the complainant's "Don Carlos" labels were submitted to the manufacturer, by whom the "Don Caesar" labels were gotten out, with instructions to take them as a guide. Previous to this, also, the defendants had changed over from the bulb bottles, in which they packed stuffed olives, to ring bottles, which the complainant was the first to introduce for that purpose, if not to design. And just about the time that the "Don Caesar" labels were adopted, the neck labels on these ring bottles were also changed; a form having a depending ear being chosen the same as that of the complainant, and a plate of stuffed olives with similar colors and lettering, in place of two halves of a split olive on the complainant's label, being shown. These imitative changes,

as it is claimed, are too many and too marked to be accidental, and are of cumulative force, establishing a determined purpose to unfairly appropriate the complainant's trade. As so put, a case of some seriousness may seem to be made out. But it disappears when the full facts are known.

The complainant has 12 shapes and styles of packages, and 6 different brands, all except the large King brand covering identically the same character and quality of berry, no particular kind of olives being thus associated and identified with any special brand or style of dress. In this respect he is like most other packers, who pack and label their goods in much the same shaped bottles, branded, of course, with different names, and marked with special labels, but otherwise closely approaching each other in design and color; those appropriate to the packing of olives being necessarily few. No packer therefore has a monopoly of any particular style of bottle, or color or character of seal. He may, of the labels which he gets up, and of the names or brands which he adopts, but even here the names, colors, and symbols unavoidably run together and have to be dealt with accordingly. Olives being largely of Spanish origin, Spanish names for brands naturally suggest themselves, and we therefore have "Isabella," "Alfonzo," and "Don Carlos," among those of the complainant, as we have "Don Caesar" among the defendants'; and "Senor Juan," of another packer; to say nothing of "Manzanilla," "King," "Queen," "Spanish Queen," "Amaranth, Queen," "Regine," "Crown," and "Monte Christo;" all of which are made use of. So in color, form, and design of labels; olives in clusters, surrounded by leaves, depending from branches, more or less naturally colored, with red and gold lettering for contrast, and displayed on oval labels, must be expected to figure; while the style of bottles, whether large or small, or vase or cylinder or jar; and the caps which close them, whether red or green or gold, or wax or metal, may vary without danger of infringement, according to the taste of the party. These are the conditions which surround the subject, and are not to be lost sight of in considering it; no exclusive rights being possible in that which is thus common property. This is not to say that a combination of color and style of packing may not be distinctive, and have become so identified with the goods of some one dealer that a manifestly purposed imitation of them will not be regarded as fraudulent. But before that result is reached, in view of the innocent possibilities, in the present instance the combination must be so unusual and the imitation so clear that the similarity could not be other than designed. And the question is whether there is anything of that kind here.

The cause of the present complaint, while centering around the adoption of the "Don Caesar" labels, as already stated, goes back as the initial cause to the use by the defendants of the so-called "ring bottle," which occurred in the latter part of 1905. The "Don Caesar" body labels and the employment of the salesman Weed, as well as the use on the ring bottles of an alleged infringing neck label, came afterwards. The defendants had previously been putting up stuffed olives in bottles with bulbous protuberances into which the olives fitted;

while the complainant had been putting them up in somewhat similar bottles, with bulging rings; and the defendants, at the time mentioned, added the ring to the bulb bottles, as a new style. There can be little doubt that in so adopting the ring bottle the defendants patterned after that of the complainant; a Gulden bottle being submitted by Mr. Chance to the manufacturer who was to make them. But while the complainant was the first to employ this style for the packing of olives, he secured no exclusive monopoly thereby. Not only was there a French bottle of similar form which had long been in use, but it had also been introduced into this country by F. H. Leggett & Co., and it was after this latter bottle that the defendants' bottle was in fact fashioned, although there is little, if any, difference from the complainant's, except in the number of rings.

Nor is one dealer altogether prohibited from copying the style or dress of package gotten up by another, under penalty of a suit for unfair trade. It is only where such special marks have become identified, in the mind of the public, with a certain party's goods, and are manifestly imitated for the purpose of getting away his trade, that this is the case. Not every appropriation, in other words, of the ideas of another, amounts to unfair trade competition. There must be an established right in that which is taken, as well as a practiced deception in doing so, before this ensues. And it is just there that the present case falls. Even if it be conceded, therefore, that the use by the complainant of the ring bottle for stuffed olives demonstrated its availability and attractiveness, and thus prompted the defendants' use, no right was invaded, the form being open to all, and there being no proof that by association it had come to stand for the complainant's goods. I do not lose sight of the fact that this was followed by the adoption of a neck label which is claimed to be imitative, and that this part of the case does not rest on the use of the ring bottle alone. But that came later, and will be best considered in that connection. All that we need to know now is that, in the use of this form of bottle, without more, there was no just cause for complaint.

The adoption of the "Don Caesar" label is directly attributed by the complainant to the employment of the salesman Weed, to which allusion has been already made. Weed sold on commission, and controlled his own trade, and was under engagement to the complainant by a three years' contract, which expired January 1, 1907. Owing to differences between them, negotiations for a renewal seemed likely to fail, and Weed applied in consequence to the defendants, by whom he was engaged to come to them at the end of his current term. And at his request, in view of this, the defendants undertook to get up some new brands. Three names were selected for this purpose, "Regine," "Don Caesar," and "Penn Club"; that of "Don Caesar" being suggested by the well-known opera, "Don Caesar de Bazan." It may be that Weed had something directly to do with the choosing of this particular name, and that he wanted it because of its resemblance to "Don Carlos," so as the better to keep his trade. But that is not material. The trade was his own, and there is nothing to show that his customers were particularly tied up to the complainant's goods. Besides that,

the defendants are answerable for their own misdoings and not for Weed's, except as they had knowledge and participated therein. Designs for labels to correspond with the brands selected were solicited from leading manufacturers; Price Bros. & Co. of New York, being first applied to by letter, which is in evidence. This letter inclosed three sizes of labels, with request for a sketch having the words "Don Caesar" as a brand name, with an olive spray in the center, and the name of defendants' firm underneath; the die to be of the same outline as the defendants' "Crown" brand label, and the lettering to be in gold and red, shaded with black, with the olive spray in natural colors.

It is charged that accompanying this was a vignette of a spray of olives cut from the complainant's "Don Carlos" label. But the evidence to sustain this is forced and cannot be accepted. This letter, moreover, resulted in nothing. The real labels which are complained of were made by the United States Printing Company; the order for them being placed through B. F. Cake, their Philadelphia agent. In submitting this latter order, there can be no question but that the complainant's "Don Carlos" labels which had been previously obtained from Weed were exhibited to Cake, not to copy, however, but merely to equal; Mr. Chance emphasizing that he desired to avoid any resemblance. Cake wanted to take these labels away with him, to which Chance demurred, but finally consented, and they were sent to the United States Printing Company in consequence. The letter forwarding them and submitting the order is important. It requests an original sketch for an embossed fancy label, as fine in quality as the Gulden label inclosed. Attention is particularly called to the coloring of the olives, which, as it is said, is usually too green, and is nearer right in the Gulden label, although even there perhaps a little too light. And a handsome sample of the fruit is promised by express to show the exact natural shade. It is out of this that was evolved the "Don Caesar" label, and the present lawsuit.

There are one or two other circumstances, however, of more or less importance. In the first letter from Cake to his principals, a few days after the other one, the name of the brand was "Alphonso," which, as we have seen, was a brand in use at the time by the complainant. And this was countermanded the next day, and "Don Caesar" substituted. To the complainant this is a matter of great significance. The intent of the defendants to appropriate one of his brand names, it is said, is manifest; the change from "Alphonso" to "Don Caesar" being made so that it would not be so flagrant. But that is not the way that it seems to me. Just how the name "Alphonso" came to be adopted and then abandoned is not, I believe, explained. But it may well have been because the defendants were not aware at first of its use by the complainant, and, when they were, chose "Don Caesar" instead, to avoid, and not to imitate. At all events, it is clear that the label as adopted, taken as a whole, outside of the name, is not open to question. As already intimated, the complainant could not monopolize so common a design as a spray of olives, and the same is true of the other things which go to make up the label. Nor are they, indeed,

imitative. The die not only is a stock form, but is entirely different; that of the complainant being almost circular, with scalloped edges, while the defendants' is an elongated and irregular oval, somewhat difficult to describe. The olives, also, both berries and branches, vary in color from those of the complainant's label, being of a much more natural shade; while the brand name "Don Caesar" is in bright red, flanked on either side by the Spanish coat of arms, which is quite distinctive. The gold of the edging is a much brighter yellow in the one than the other, and the edge is broader and milled prominently. The points of difference are thus marked and significant, as much so as could be expected from the nature of the commodity, which it is designed to display, and the things appropriate thereto. The name is the only thing to cause any confusion, and, rightly considered, that is not serious; the other features being enough to offset it. Outside of that, the case certainly presents nothing more than the not unnatural and by no means reprehensible ambition of one dealer to equal the attractive way in which the same character of goods have been put up by a business rival; and that to my mind is the whole significance of the adoption of this label and brand.

It is said, however, that, at the same time that the defendants got out their "Don Caesar" labels, they also changed over from a green to a red wax cap, and there is some attempt to show that a red wax cap was identified in the trade, with Gulden's "Don Carlos" olives. But red wax caps, as already intimated, were too common and too generally in use on olives as well as other bottles, for any one to appropriate them exclusively. And it would require much more convincing testimony than has been given, in consequence, to justify the conclusion that the trade had so accepted them. Their use by the defendants, it may be, is a circumstance to be considered, with the other evidence. But it amounts to very little by itself, and the case is otherwise so inconclusive that nothing is to be made out of all of it combined.

It is further said that, along with the adoption of the "Don Caesar" labels, the defendants also got out a new neck label for their ring bottles, with a depending ear, similar in both form and feature to that used by the complainant on the same style of bottle, showing a plate of olives, stuffed with red peppers, where the complainant has two halves of a split stuffed olive; the words, "Manzanilla Olives, Stuffed with Spanish Sweet Peppers," being the lettering on each. But whatever imitation, as so stated, there may seem to be, there is none in fact, when the two are put side by side and compared, which is the guide. The coloring and the arrangement dispel any such idea. The controlling feature of the defendants' label is a circular medallion of the size of a quarter dollar, distinctly outlined in gold, with a plate of half a dozen small stuffed olives in the center, and the words "Manzanilla" in red above, and the word "Olives" in blue and gold below, and on either side the words "Stuffed with Spanish Sweet Peppers," in red, and the name of the defendants as importers and packers in blue; while the complainant displays the words "Manzanilla Olives" in yellow on a red ground, along the top of the label, with the words "Spanish

Sweet Peppers" in gold letters, just below, while in the lower part, on the ear of the label, are shown the two halves of a split olive in natural colors with the complainant's name. To the casual and unconcerned observer, there may be points of resemblance between the two. But in general effect, to say nothing of critical examination, they are as wide apart as could be expected or as is required. The complainant lays stress on the particular form of his label, unlike anything, as it is said, elsewhere employed, as well as on the special olive design displayed. But except that it also extends below the rest of the label, the defendants' medallion is entirely unlike this, and is markedly distinctive, while the show of olives on the two by no means corresponds. If there is any confusion in the minds of customers, it cannot be laid to the labels, whatever may be said of the bottles, of which, as we have seen, the complainant can claim no monopoly, and, in all probability, results as much as anything from the olives themselves, with their red spots showing through the glass, and dominating the package, with which we have no concern.

Sight is not, however, to be lost of the fact, as it is said, that the adoption of the "Don Caesar" brand, and the change of labels, large and small, were at the instigation of Weed, and were made use of by him to supplant the goods of the complainant in territory before that exclusively the complainant's. There is no doubt that through Weed the defendants' goods were introduced where the complainant's had previously prevailed, and it may be that the way they were put up helped this on. And it is this loss of territory beyond question which is the real cause of bitterness in the case, except for which the present charge would never have been made. But Weed's customers, as already stated, were his own, and, if the complainant made a mistake in letting him go, the defendants are not to blame for it, nor for taking him over after he was free. Nor is there anything whatever to show that the resemblances in brand or dress, which are complained of, were made use of by him to deceive parties to whom he had previously sold the complainant's goods; without which the other things go for naught. The nearest to a case, all things considered, that is made out, is in the use by the defendants of the name "Don Caesar" as a brand, in breach of the complainant's trade-mark, "Don Carlos." But that, as already stated, did not in the judgment of the Court of Appeals amount to an infringement, and not having been fraudulently made use of by Weed, or any one, to divert the complainant's trade, the whole case falls. It has also now been abandoned by the defendants, removing all possible cause for complaint.

The bill must therefore be dismissed, with costs.